22 A.3d 845

**Ricky SAVOY**

v.

**STATE of Maryland.**

**No. 120, Sept. Term, 2009.**

Court of Appeals of Maryland.

June 23, 2011.

234

Austin K. Brown, Assigned Public Defender, Washington, D.C., for petitioner.

James E. Williams, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, specially assigned), JJ.

BARBERA, J.

Petitioner Ricky Savoy was tried before a jury in the Circuit Court for Baltimore City and convicted of involuntary manslaughter, use of a handgun in the commission of a crime of violence, and carrying a handgun. Petitioner contends that the trial court's instruction to the jury on the standard of proof violated due process by reducing the State's burden of proof to below the constitutionally-required standard of proof beyond a reasonable doubt. Petitioner, having made no objection to the instruction at trial, argued on appeal to the Court of Special Appeals that the erroneous instruction was a structural error that is per se reversible, even in the absence of a contemporaneous objection. He argued, alternatively, that the Court of Special Appeals should take cognizance of "plain error," as permitted by Maryland Rule 4–325(e), and reverse the judgments on that basis. The Court of Special Appeals affirmed the judgments of conviction. The court held that the jury instruction, viewed in its entirety, did not constitute constitutional error, much less constitutional error that is structural in nature, and there was no cause to exercise the court's discretion to review the claim under the guise of "plain error."

We granted Petitioner's request to review the judgment of the Court of Special Appeals. For the following reasons, we hold that the instruction contained error of constitutional dimension and was structural in nature; the error is worthy of

the exercise of our discretion to take cognizance of the error as "plain"; and Petitioner is entitled to a new trial as a result.

## I.

In light of the legal question before us, we need not undertake a detailed account of the evidence offered at trial. It suffices for our purposes to understand that the State presented legally sufficient evidence that, on May 28, 1993, Petitioner shot and killed Marvin Watts during an altercation between the two.

Petitioner's three-day jury trial commenced on May 9, 1994. At the close of all the evidence, the court gave the following jury instruction on the beyond-a-reasonable-doubt standard of proof required for conviction:

[T]he defendant is presumed innocent of the charges until proven guilty beyond a reasonable doubt and to a moral certainty. He comes into court clothed with this presumption of innocence, which remains with him from the beginning to the end of the trial as though it were testified to and supported by evidence that the defendant is innocent.

The burden of proving the defendant guilty is upon the prosecution from the beginning to the end of the trial for every element of the crime charged. The defendant has no burden to sustain and does not have to prove his innocence.

The charges against the defendant are not evidence of guilt. They are merely complaints to let you and the defendant know what the charges are.

After the jury has fairly and carefully reviewed all the evidence in this case, if you feel that the prosecution has failed to prove beyond a reasonable doubt **and to a moral certainty** all of the evidence necessary to convict, then you must acquit the defendant.

The test of reasonable doubt is that the evidence that the State has produced must be so convincing that it would enable you to act on an important piece of business in your every day life. **The words "to a moral certainty" do not mean an absolute or mathematical certainty but a cer-**

**tainty based upon convincing grounds of probability.** The phrase "beyond a reasonable doubt" does not mean beyond any doubt or all possible doubt. But as the words indicate, beyond a doubt that is reasonable.

You are further instructed that the burden is on the State to prove beyond a reasonable doubt not only that the offenses were committed, but that the defendant is the person who committed them.

(Emphases added.)

Petitioner did not object to the instruction. The jury convicted him of involuntary manslaughter, use of a handgun in the commission of a felony or crime of violence, and carrying a handgun upon his person. The court imposed a total of 33 years' imprisonment, which included separate sentences for the two handgun-related convictions.

On direct appeal, Petitioner did not contest the reasonable doubt instruction. He argued, successfully, only that the handgun-related convictions should merge. His sentence was thereby reduced to 30 years' imprisonment. Petitioner thereafter pursued post-conviction relief, which resulted in his receiving a second, belated direct appeal on the ground that his counsel on direct appeal was ineffective in failing to challenge, as plainly erroneous, the reasonable doubt instruction given at trial.[1]

---

1. Getting to that result involved a number of procedural steps. In 2002, Petitioner filed a *pro se* petition for post conviction relief, asserting that he had ineffective assistance of counsel at trial and on appeal. On December 2, 2002, the post conviction court found that Petitioner had received ineffective assistance of both trial counsel, who failed to object to the instruction, and appellate counsel, who failed to challenge the reasonable doubt instruction as plainly erroneous. Accordingly, the post conviction court granted Petitioner a new trial. The State filed an application for leave to appeal to the Court of Special Appeals, which granted the application and placed the case on the regular appeal docket.

   The Court of Special Appeals reversed the post conviction court's ruling that trial counsel was ineffective. The appellate court, though, agreed with the post conviction court that Petitioner received ineffective assistance of appellate counsel and held that a belated appeal was the appropriate relief.

In 2008, the Court of Special Appeals heard the appeal. Petitioner, citing *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), asserted that the reasonable doubt instruction reduced the burden of proof at his trial. That error, Petitioner argued, violated the Fourteenth Amendment Due Process Clause and the Sixth Amendment right to trial by jury, thereby creating structural error that required reversal of the 1994 judgments of conviction, even in the absence of a contemporaneous objection at trial. Petitioner further argued that, even if the instructional error was not structural, the Court of Special Appeals should take cognizance of it as "plain error" and reverse the convictions on that ground.

The State did not contest Petitioner's premise that the reasonable doubt instruction was erroneous. Instead, the State took the position that Petitioner could not overcome the hurdles posed by the limits of "plain error" review merely by casting the error as "structural." The State therefore argued that the Court of Special Appeals should decline Petitioner's request for automatic review. Even so, the State further argued, the error in the instruction was not of constitutional dimension, much less structural error; moreover, Petitioner made no persuasive argument suggesting the need for or desirability of the Court of Special Appeals' taking cognizance of plain error.

In an unreported opinion, the Court of Special Appeals affirmed the judgments of conviction. The Court recognized that, under *Sullivan,* a reasonable doubt instruction that reduces the burden of proof is constitutional error that is structural in nature. The Court of Special Appeals also recognized that, under *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), not all errors in a reasonable doubt instruction are of constitutional magnitude. The court concluded that the error in the instruction given at Petitioner's trial was not of that magnitude. The court observed that the instruction was very similar to the instruction held to be plainly erroneous in *Himple v. State,* 101 Md.App. 579, 647 A.2d 1240 (1994). The court, however, found no

reason to exercise its discretion to take cognizance of the error in Petitioner's case as "plain."

We granted certiorari to answer the following questions:

(1) Did the Court of Special Appeals err when it held that the reasonable doubt instructions issued to the jury at Petitioner's trial, which defined the standard for beyond a reasonable doubt as "certainty based upon convincing grounds of probability," did not constitute a structural error nor violate Petitioner's Sixth and Fourteenth amendment constitutional rights?

(2) Did the Court of Special Appeals abuse its discretion in refusing to recognize plain error in reasonable doubt jury instructions, which defined the standard for reasonable doubt as "certainty based upon convincing grounds of probability"?

## II.

We begin our discussion by noting the two points on which the parties agree: (1) the reasonable doubt instruction given at Petitioner's trial contained erroneous language; and (2) Petitioner did not lodge a contemporaneous objection to it. The parties have diametrically opposing views, though, concerning whether Petitioner's failure to lodge a contemporaneous objection to the instruction erects procedural and substantive hurdles to obtaining appellate relief.

Looming large in the analysis is Maryland Rule 4–325(e), which provides:

No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

240

The State, not surprisingly, hangs its hat on that rule. The State argues that the only way Petitioner can obtain appellate relief is by persuading us either that the Court of Special Appeals abused its discretion in declining to review the instructional error under the guise of plain error or that we should exercise our discretion under that same standard. In that regard, the State points out that the nature of the error, whether labeled "constitutional," "structural," or otherwise, is irrelevant to whether Petitioner preserved for appellate review his challenge to the instruction.

■ Petitioner disagrees that the plain error rule necessarily controls his right to appellate review of the challenged instruction. He argues, albeit in a footnote only, that preservation by contemporaneous objection is not required to preserve an appellate challenge to a reasonable doubt instruction that lowers the constitutional standard of proof, because "waiver" of such error requires that it be a *Zerbst*-type "intelligent and knowing" waiver.[2] Petitioner further argues that an objection is unnecessary when, as here, the claimed instructional error creates a "structural" problem.

■ We disagree with both of Petitioner's arguments for why, in his view, the "plain error" standard of Rule 4–325(e) does not apply to the instructional error the parties agree occurred in this case. To begin, Petitioner confuses the concepts of a *Zerbst*-type substantive waiver of a known right or privilege, on the one hand, and a procedural forfeiture of the right to appellate review of trial error by failure to lodge a contemporaneous objection, on the other. "Forfeiture is the failure to make a timely assertion of a right, whereas waiver is the 'intentional relinquishment or abandonment of a known right.'" *State v. Rich*, 415 Md. 567, 580, 3 A.3d 1210, 1217 (2010) (quoting *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 113 S.Ct. 1770 (1993)). The two doctrines are distinct, and we have made clear that "[t]he 'knowing and

---

**2.** *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

intelligent' waiver concept is not applicable to the failure to object to an erroneous jury instruction." *Hunt v. State,* 345 Md. 122, 150, 691 A.2d 1255, 1268 (1997) (rejecting that argument in the context of a post conviction challenge to the constitutional adequacy of a reasonable doubt instruction) (citing *Davis v. State,* 285 Md. 19, 35, 400 A.2d 406, 414 (1979)).

■ Petitioner's second argument for why he need not have objected to the instruction in order to obtain appellate review is that, because the instructional error is alleged to be of constitutional dimension and "structural" in nature, the error is per se subject to appellate review. That argument relies heavily upon *Sullivan.*

In *Sullivan* (about which we shall say more later in this opinion), the Supreme Court held that a constitutionally deficient reasonable doubt jury instruction is structural error and, consequently, is never harmless error. 508 U.S. at 280, 113 S.Ct. 2078. The Supreme Court, though, did not suggest in that case, or in any subsequent case insofar as we know, that a structural error is immune from the ordinary appellate-review requirement of a contemporaneous objection to the claimed error, at trial.

Rule 8–131(a) is the general rule governing procedural forfeiture of an appellate claim through inaction at the trial level. That rule reads, in pertinent part: "Ordinarily, the appellate court will not decide any other issue [that is, any issue other than jurisdiction over the subject matter and, unless waived, over the person] unless it plainly appears by the record to have been raised in or decided by the trial court...." [3] We have not hesitated to decline to review on

---

**3.** Rule 8–131(a) reads in its entirety:

**Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may

direct appeal claims of constitutional dimension that were not preserved under Rule 8–131(a). *See Robinson v. State*, 410 Md. 91, 106, 976 A.2d 1072, 1081 (2009) (stating that errors of constitutional dimension can be waived, and declining to review on direct appeal a claim of a violation of the Sixth Amendment right to a public trial, where the claim was not raised at trial); *Taylor v. State*, 381 Md. 602, 614, 851 A.2d 551, 558 (2004) (explaining that "[e]ven errors of Constitutional dimension may be waived by failure to interpose a timely objection at trial" (citation omitted)); *Walker v. State*, 338 Md. 253, 262–63, 658 A.2d 239, 243 (declining to consider the petitioner's Due Process and Sixth Amendment claims because the issues were not raised below and thus not preserved for review under Md. Rule 8–131(a)).

*State v. Rose*, 345 Md. 238, 691 A.2d 1314 (1997), also informs the issue. We held in *Rose* that a post-conviction petitioner is not excused from the contemporaneous objection requirement, in connection with an allegedly constitutionally deficient reasonable doubt instruction, notwithstanding that the error involved fundamental constitutional rights. *Id.* at 248–49, 691 A.2d at 1319. In so holding, we explained:

> Our cases make it clear that, simply because an asserted right is derived from the Constitution of the United States or the Constitution of Maryland, or is regarded as a "fundamental right," does not necessarily make the "intelligent and knowing" standard of waiver applicable. Rather, most rights, whether constitutional, statutory or common law, may be waived by inaction or failure to adhere to legitimate procedural requirements.

*Id.* at 248, 691 A.2d at 1319. *See also Hunt*, 345 Md. at 152, 691 A.2d at 1269–70 (declining, on post conviction review in a capital case, to overlook the appellant's failure to raise a timely challenge to the reasonable doubt instruction).

---

decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

■ In addition to the general rule requiring preservation of claims by contemporaneous objection is, of course, Maryland Rule 4–325(e), which requires contemporaneous objection in order to challenge instructional error on appeal, as a matter of right. Absent from Rule 4–325(e), or any other rule relevant to appellate review, is an exception from the contemporaneous objection requirement for structural errors. In other words, appellate review of unpreserved instructional errors is limited to circumstances warranting plain error review, regardless of the nature of the error.

■ We set forth in *State v. Hutchinson* the circumstances under which an appellate court should consider exercising discretion to take cognizance of plain error: "[A]n appellate court should take cognizance of unobjected to error" when the error is "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." 287 Md. 198, 203, 411 A.2d 1035, 1038 (1980). Factors to consider in that determination include "the materiality of the error in the context in which it arose, giving due regard to whether the error was purely technical, the product of conscious design or trial tactics or the result of bald inattention." *Id.,* 411 A.2d at 1038. We have not deviated from that standard in the years since *Hutchinson. See, e.g., Miller v. State,* 380 Md. 1, 29–30, 843 A.2d 803, 820 (2004) (collecting cases).

The error at issue in the present case is instructional error. Notwithstanding (as we shall see) that the error is of constitutional dimension and structural in nature, Petitioner was required, but failed, to make a timely objection to the instruction. He therefore has no right to automatic appellate review of it. It remains for us to determine whether the error is appropriate for review under the guise of plain error. We therefore shall examine Petitioner's remaining arguments through the prism of that doctrine.[4]

---

4. The overwhelming majority of courts that have considered this issue have held, as we do here, that un-preserved structural errors are not automatically reversible, but, instead, are subject to plain error review. *See United States v. Birbal,* 62 F.3d 456, 461 (2d Cir.1995) (applying

*Is the error in the reasonable doubt instruction given*
*in this case of constitutional dimension and, if*
*so, is it structural error?*

Review for plain error requires as an initial step that the instruction contain error. The parties, as we have said, agree

plain error review to un-objected-to constitutionally deficient reasonable doubt instruction); *United States v. Washington,* 12 F.3d 1128, 1138 (D.C.Cir.1994) (explaining that an un-objected-to constitutionally deficient reasonable doubt instruction is structural error under *Sullivan* and applying plain error review); *United States v. Colon–Pagan,* 1 F.3d 80, 81 (1st Cir.1993) (Breyer, J.) ("Because appellant's counsel did not object to [a constitutionally deficient reasonable doubt instruction] at trial, the issue on appeal is whether [the instructions] contain an error that is 'plain' or a 'defect' [ ] that affect[s] substantial rights"). *See also United States v. David,* 83 F.3d 638, 647–48 (4th Cir.1996) (applying plain error review to structural error); *United States v. Lopez,* 71 F.3d 954, 960 (1st Cir.1995) ("In all events, our best guess is that the Supreme Court would regard an omitted element reversible error *per se* if there were a timely objection—although not automatically 'plain error' if no objection occurred. . . .").

Petitioner relies for the contrary view on two out-of-state cases, *People v. Duncan,* 462 Mich. 47, 610 N.W.2d 551 (2000), and *State v. Colon,* 118 Ohio St.3d 26, 885 N.E.2d 917 (2008). We do not find those cases persuasive.

The analysis in *Duncan,* in our view, is flawed. True, the Michigan Supreme Court held in *Duncan* that structural errors are automatically reversible, regardless of the failure to make a contemporaneous objection. 610 N.W.2d at 552 (reversing defendant's conviction despite failure to object at trial to instruction's omission of all of the elements of a crime because the omission was structural error). In so holding, the Michigan Supreme Court misconstrued, and thereby misapplied, Supreme Court precedent, particularly *Sullivan, Neder v. United States,* 527 U.S. 1, 7, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), and *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), to support that court's conclusion that structural errors are not subject to preservation requirements. As explained above, *Sullivan* says nothing about automatic appellate review of un-preserved structural errors. Neither does *Neder,* in which the Supreme Court held that the omission of an element of a crime in a jury instruction is subject to harmless-error analysis. 527 U.S. at 10, 119 S.Ct. 1827 (in fact, an objection was made to the omission at trial). And in *Johnson,* the Supreme Court expressly avoided deciding whether the instructional error was structural and thus automatically reversible, explaining that, even if it was, the error did not "seriously affect[ ] the fairness, integrity or public reputation of [the] judicial proceeding[ ]" and would not warrant exercise of plain error review. 520 U.S. at 469, 117 S.Ct. 1544 ("But we need not decide that question because, even assuming that the failure to submit materiality to the jury [was a structural error], it does not meet the final requirement of [plain error].").

Nor are we persuaded by *Colon,* 885 N.E.2d at 926, which was expressly overruled by the Ohio Supreme Court in *State v. Horner,* 126

that the reasonable doubt instruction given at Petitioner's trial was erroneous.

The next step in the analysis requires that we consider whether the error was "plain" and "material" to Petitioner's right to a fair trial; that is, we must consider whether the error in the instruction lowered the burden of proof and thereby created error that was clear and " 'fundamental to assure the defendant a fair trial.' " *Miller*, 380 Md. at 29, 843 A.2d at 820 (quoting *Hutchinson*, 287 Md. at 203, 411 A.2d at 1038). Petitioner argues that the error in the reasonable doubt instruction given at his trial meets that standard.

Before examining that contention, we pause to repeat that Petitioner was tried in 1994. His trial therefore long predates *Ruffin v. State*, 394 Md. 355, 906 A.2d 360 (2006). We held in *Ruffin* that, going forward from the date of that decision,[5] "in every criminal jury trial, the trial court is required to instruct the jury on the presumption of innocence and the reasonable doubt standard of proof which closely adheres to MPJI–CR 2:02[,]" [6] and "[d]eviations in substance will not be tolerated."

Ohio St.3d 466, 935 N.E.2d 26, 34 (2010) (expressly overruling *Colon* and stating "[w]e hold that failure to timely object to a defect in an indictment constitutes a waiver" and "is limited to a plain-error review on appeal").

5. We made clear in *Ruffin* that:

Our holding in this case represents a change in a Maryland common law principle and not an overruling of prior cases on the ground that they were erroneously decided. Consequently, the defendant Ruffin is entitled to the benefit of our holding, but, otherwise, the holding shall be applied only prospectively. In other words, today's holding "applies to the instant case [] . . . and to all [criminal] trials commencing and trials in progress on or after the date this opinion is filed."

394 Md. at 373 n. 7, 906 A.2d at 371 n. 7 (citation omitted).

6. MPJI–CR 2:02 provides:

The defendant is presumed to be innocent of the charges. This presumption remains with the defendant throughout every stage of the trial and is not overcome unless you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the State throughout the trial. The defendant is not required to prove [his]

*Id.* at 373, 906 A.2d at 371. Because we made clear in *Ruffin* that our holding has only prospective application, it has no bearing on Petitioner's case.

▮▮▮▮ The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the State to prove every element of an offense charged beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Constitution, however, "does not require that any particular form of words be used in advising the jury of the government's burden of proof.... Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'" *Victor,* 511 U.S. at 5, 114 S.Ct. 1239 (upholding reasonable doubt instruction as constitutionally sound despite troublesome language because, upon consideration of the instruction in its entirety, there was no reasonable likelihood that the jury misunderstood the standard of proof beyond a reasonable doubt) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954)). *Accord Merzbacher v. State,* 346 Md. 391, 401, 697 A.2d 432, 437 (1997) (We review the trial court's " 'explanation of reasonable doubt as a whole; [we cannot] determine the propriety of an explanation from an isolated statement[, but must] view[ ] the effect of a suspect statement on the jury in light of the entire explanation.'" (quoting *Wills v. State,* 329 Md. 370, 384, 620 A.2d 295, 302 (1993))).

▮▮▮▮ The inquiry is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire,* 502

---

[her] innocence. However, the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty. Nor is the State required to negate every conceivable circumstance of innocence.

A reasonable doubt is a doubt founded upon reason. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief without reservation in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then reasonable doubt exists and the defendant must be found not guilty.

U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). If upon applying that standard of review we determine that the reasonable doubt instruction was constitutionally deficient, then the error is structural and defies analysis by harmless error standards. *See Sullivan,* 508 U.S. at 280, 113 S.Ct. 2078; *Merzbacher,* 346 Md. at 398, 697 A.2d at 436 ("The reasonable doubt standard is such an indispensable and necessary part of any criminal proceeding that, with respect to a case tried before a jury, the trial court's failure to inform the jury of that standard constitutes reversible error."); *Wills,* 329 Md. at 376, 620 A.2d at 298 (stating that inclusion of a reasonable doubt instruction "is so indispensable that the Supreme Court has indicated that failure to instruct the jury of the requirement of the reasonable doubt standard is never harmless error" (citation omitted)).

To determine whether the instruction given at Petitioner's trial is constitutionally deficient, we look first to Supreme Court jurisprudence on the subject. To our knowledge, there is but one case, *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), in which the Supreme Court found a reasonable doubt instruction constitutionally deficient. The instruction in *Cage* read:

If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an actual substantial doubt. It is a doubt that a reasonable man can seriously entertain.

What is required is not an absolute or mathematical certainty, but a moral certainty.

498 U.S. at 40, 111 S.Ct. 328. The Supreme Court determined that the instruction, when viewed as a whole, "suggest[ed] a higher degree of doubt than is required for acquittal," because the instruction equated reasonable doubt with "grave uncertainty" and "actual substantial doubt." *Id.* at 41, 111 S.Ct. 328. The Court reversed the conviction on the basis of the constitutionally deficient instruction. *Id.*

Four years later, the Supreme Court, in *Victor,* again construed a reasonable doubt instruction for constitutional defectiveness.[7] The Supreme Court considered in *Victor* the companion cases of petitioners Arthur Sandoval and Clarence Victor, each of whom asserted that his first-degree murder conviction was the product of a constitutionally-defective reasonable-doubt jury instruction. 511 U.S. at 7, 18–19, 114 S.Ct. 1239.

At Sandoval's trial, the court instructed the jury on the prosecution's burden of proof as follows:

A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.

Reasonable doubt is defined as follows: It *is not a mere possible doubt;* because everything relating to human affairs, and *depending on moral evidence,* is open to some possible or imaginary doubt. It is that state of the case

---

7. *Sullivan,* which dealt with a reasonable doubt jury instruction, came before *Victor. Sullivan,* though, did not address whether the reasonable doubt jury instruction in that case was constitutionally defective, as the State conceded there that the instruction was identical to that used in *Cage* and thus constitutionally defective. *See Sullivan,* 508 U.S. at 277, 113 S.Ct. 2078. At issue in *Sullivan* was whether the error was subject to harmless error analysis. As we have said, the Court held that a constitutional defect in a reasonable doubt instruction is not subject to harmless error analysis. *Id.*

which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge.

*Victor*, 511 U.S. at 7, 114 S.Ct. 1239. Sandoval contended that the language italicized above reduced the State's burden of proof and thereby violated the Due Process Clause. *Id.* at 8, 114 S.Ct. 1239. The Court focused on the phrases "moral certainty" and "moral evidence." Although the phrase is "ambiguous in the abstract," the Court determined that "moral certainty," in light of the immediately preceding clause "abiding conviction," "impress[ed] upon the fact-finder the need to reach a subjective state of near certitude of the guilt of the accused." *Id.* at 15, 114 S.Ct. 1239 (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The Court explained that the instruction given in Sandoval's case was further distinguished from the instruction given in *Cage* by the presence in the instruction to Sandoval's jury that (1) the decision must be based solely on the evidence presented in the case ("after the entire comparison and consideration of all the evidence"), and (2) the jury must "determine the facts of the case from the evidence received in the trial and not from any other source." *Id.* at 16, 114 S.Ct. 1239. The Court expressed disdain for the use of "moral certainty" in jury instructions; the Court nevertheless held that the instruction given in Sandoval's case, when read in its entirety, was not constitutionally defective. *Id.* at 16–17, 114 S.Ct. 1239.

The Court then addressed the instruction provided at Victor's trial, where the trial court, after stating that the burden is always on the State to prove all elements of a charged offense, provided the following reasonable doubt charge:

"Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evi-

dence, to have an abiding conviction, *to a moral certainty,* of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the *strong probabilities of the case,* provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* reasonably arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

*Id.* at 18, 114 S.Ct. 1239.

The Court observed that equating reasonable doubt with "substantial doubt" is problematic because it could "imply a doubt greater than required for acquittal under *Winship* [.] " *Id.* at 20, 114 S.Ct. 1239. The Court's concern about that language, however, was alleviated by the language that followed the problematic words: the instruction refined the meaning of "substantial" as not involving a "mere possibility, [ ] bare imagination, or [ ] fanciful conjecture." *Id.* Furthermore, unlike the instruction in *Cage,* the instruction in Victor's case provided an alternative explanation of reasonable doubt: "a doubt that would cause a reasonable person to hesitate to act." *Id.* at 20, 114 S.Ct. 1239. Given those additions to the instruction, the Court was convinced that there was no reasonable likelihood that the jury would have interpreted the instruction as requiring proof that is less stringent than proof beyond a reasonable doubt.[8]

This Court's opinions are in accord with the Supreme Court's jurisprudence on the subject. *See Wills,* 329 Md. at 376–384, 388, 620 A.2d at 297–302, 303 (holding that the

---

8. For similar reasons, the Court rejected Victor's objection to the use of the term "moral certainty" and "strong probabilities." *Victor,* 511 U.S. at 21–22, 114 S.Ct. 1239.

reasonable doubt instruction given in that case was more like the preponderance of the evidence standard and "did not measure up to an acceptable explanation of the reasonable doubt standard," because the instruction could lead a jury to believe that, "if the evidence adduced by the state has more convincing force and produces in the minds of the jury a belief that it is more likely true than not, the reasonable doubt standard has been met"); *see also Ruffin,* 394 Md. at 371, 906 A.2d at 370 (collecting cases on the subject); *Miller,* 380 Md. at 29–30, 843 A.2d at 820 (holding that the appellant, by failing to object timely to the reasonable doubt instruction, had waived his right to complain about it on appeal, but observing that, had the Court reached the merits of the challenge, it would have found no error in the inclusion in the instruction of the phrase "without hesitation" instead of "without reservation").

We have no need to rehearse in further detail the jurisprudence developed in those cases. One additional case, however, deserves some discussion. *Himple,* 101 Md.App. 579, 647 A.2d 1240, involved a reasonable doubt instruction virtually identical to the one given in Petitioner's case.[9] Of additional interest, for our purposes, is that the Court of Special Appeals exercised its discretion in that case to take cognizance of plain error in the reasonable doubt instruction (as there had been no contemporaneous objection to it), and ordered a new trial

---

**9.** The court gave the following reasonable doubt instruction at Himple's trial:

The burden of proving the defendant guilty is upon the prosecution from the beginning to the end of the trail [sic]. The defendant has no burden to sustain, does not have to prove his innocence.

. . . .

The charges against the defendant are not evidence of guilt, they are merely a complaint to let the Jury and the defense know what the charges are. The test of reasonable doubt is the evidence that the State has produced must be so convincing that it would enable you to act on an important piece of business in your everyday life. **The words, to a moral certainty, do not mean absolute or mathematical certainty, but a certainty based upon a convincing ground of probability.**

*Himple,* 101 Md.App. at 581, 647 A.2d at 1241 (emphasis added).

on the basis of that instructional error. It therefore is understandable that both Petitioner and the State devote much of their attention to *Himple*.

The Court of Special Appeals, in undertaking plain error review of the un-objected-to instruction, considered two aspects of it: the language advising that "the words, to a moral certainty do not mean absolute or mathematical certainty, but a certainty based upon a convincing ground of probability"; and the omission of the phrase "without reservation" in the portion of the instruction that stated: "The test of reasonable doubt is the evidence that the State has produced must be so convincing that it would enable you to act on an important piece of business in everyday life." *Id.* at 581, 647 A.2d at 1241. The Court of Special Appeals concluded that the "convincing ground of probability" language undermined the reasonable doubt standard because the language equated a "convincing ground of probability to reasonable doubt. In other words, the jurors were instructed that if they were convinced that it was probable that appellant committed the offense, they could convict him of the charges." *Id.* at 582–83, 647 A.2d at 1242. The *Himple* Court emphasized that omission of the "without reservation" language alone "would not necessarily constitute 'plain error.'" *Id.*, 647 A.2d at 1242. The Court nonetheless considered the omission to be problematic:

Even if the "probability" factor had not been included, the balance of the instruction given [in Himple's case] appear[ed] to equate the degree with which people make important decisions in their everyday life with the reasonable doubt standard. That is not an accurate comparison. The important language in that portion of the pattern instruction that makes it a proper comparison is the language "willing to act ... *without reservation.*" The legal reasonable doubt standard and the decision making progress in respect to important personal matters in a layman's life are not the same. It is the language "without reservation" that tends to impart to the jury the degree of certainty that elevates the comparison in the direction of the reasonable doubt standard.

*Id.* at 583, 647 A.2d at 1242 (citations omitted). The Court of Special Appeals concluded that the instruction given at Himple's trial contained "the type of error [that] we will consider even in the absence of preservation. It is 'plain error.' It is also clearly prejudicial." *Id.*, 647 A.2d at 1242.

With *Cage, Victor,* and *Himple* as guideposts, we turn to the instruction in the present case. Petitioner complains that the trial court reduced the State's burden of proof and thereby violated *Winship,* by instructing the jury that the "words to a moral certainty do not mean an absolute or mathematical certainty but a certainty based upon convincing grounds of probability," and by omitting "without reservation" from the description of reasonable doubt as "enabl[ing] you to act on an important piece of business in your everyday life."

The State counters that the instruction, when viewed in its entirety, properly instructed the jury on the reasonable doubt standard despite the inclusion of the "moral certainty" definition found deficient in *Himple.* As for the trial court's omission of the "without reservation" language, the State points to, inter alia, *Merzbacher,* 346 Md. at 399–400, 697 A.2d at 436, in which we upheld a reasonable doubt jury instruction that omitted the "without reservation" language, and *Wills,* 329 Md. at 384, 620 A.2d at 305, in which we held that the phrase "without reservation" is not required for an instruction to be constitutionally sufficient but is advisable to include.

We conclude, much as did the Court of Special Appeals in analyzing the virtually identical reasonable doubt instruction in *Himple,* that the instruction given at Petitioner's trial was constitutionally deficient. Aside from the troublesome use of the phrase "moral certainty," *see Victor,* 511 U.S. at 16, 114 S.Ct. 1239,[10] the instruction lacks the curative

---

10. Although not raised by Petitioner, the use of the phrase "moral certainty" has been discouraged by courts around the country. *See, e.g., Gilday v. Callahan,* 59 F.3d 257, 262–63 (1995) (expressing concern that the term could leave "the jury [ ] feel[ing] justified in convicting based on a feeling rather than on the facts of the case"); *Commonwealth v. Pinckney,* 419 Mass. 341, 644 N.E.2d 973 (1995) (noting that

**254**

language present in *Victor* that would permit us to overlook the problematic language of "convincing grounds of probability." Looking for context to the words immediately surrounding the problematic language in the instruction, we find no words explaining or refining the phrase "a convincing ground of probability" that give some assurance that the jury understood the concept of proof beyond a reasonable doubt as requiring more than a mere "probability." *See Himple*, 101 Md.App. at 582–83, 647 A.2d at 1242. That error alone renders the instruction constitutionally deficient.

That same error, moreover, must be considered in concert with the omission of the "without reservation" language in the sentence that followed. We hew to our holding in *Merzbacher*, 346 Md. at 399–400, 697 A.2d at 436, that the omission of the "without reservation" language is alone not fatal. Yet we must consider the absence of that language in light of the entire instruction given in Petitioner's case. Like our colleagues in *Himple*, we cannot say that, in viewing the instruction as a whole, there is no "reasonable likelihood that the jury had applied the challenged instruction in a way that violates the Constitution." *McGuire*, 502 U.S. at 72, 112 S.Ct. 475 (internal quotation marks and citation omitted).

Accordingly, we hold that the error in the reasonable doubt instruction given in Petitioner's case is of constitutional dimension and, under *Sullivan*, is "structural" error. Moreover, such error is self-evidently plain and material to Petitioner's fundamental right to a fair trial. *See Hutchinson*, 287 Md. at 203, 411 A.2d at 1038.

That we have found error in the instruction, though, does not answer the ultimate question, which is whether the discretion of the Court of Special Appeals or, for that matter, this Court, should be exercised to take cognizance of the unobjected-to error. It is to that question we turn next.

the use of the term without surrounding clarifying language can be reversible error).

*Should the structural error in the instruction be subject
to discretionary review under Rule 4–325?*

██  We have not hesitated to exercise discretion, in the appropriate (albeit rare) case, to take cognizance of un-objected-to instructional error under the guise of plain error. *See Richmond v. State*, 330 Md. 223, 623 A.2d 630 (1993) (taking cognizance of plain error in a jury instruction on malicious wounding with intent to disable that omitted specific intent); *Franklin v. State*, 319 Md. 116, 571 A.2d 1208 (1990) (taking cognizance of plain error in an instruction indicating that specific intent to kill was not required to establish assault with intent to murder); *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988) (finding plain error where jury instruction omitted element of knowledge from CDS possession). We conclude, for several reasons, that this case, too, is an appropriate case for the exercise of plain error review.[11]

The instructional error was serious, as it undermined a core value of constitutional criminal jurisprudence: that a person charged with a crime shall not be convicted on less than proof beyond a reasonable doubt. The prejudice to Petitioner's case is presumed. *Sullivan*, 508 U.S. at 280, 113 S.Ct. 2078. Moreover, it is most unlikely that counsel's failure to object to the instruction was a matter of strategy.

We bear in mind, moreover, that this case comes to us as a direct, albeit much belated, appeal. Therefore, we have considered Petitioner's case as if it were the Spring of 1994. At that time, *Cage* had been on the books for four years, *Sullivan*, one year, and *Victor*, a matter of several months. *Himple*, *Wills*, and *Ruffin* were not to be decided for several months, eight years, and twelve years, respectively. In other

---

11. Petitioner framed the question as whether the Court of Special Appeals abused its discretion in failing to take cognizance of the error as "plain." We need not answer that precise question, however, as we shall exercise our independent discretion under Rule 4–325(e) to take cognizance of the error. *See Squire v. State*, 280 Md. 132, 134, 368 A.2d 1019, 1020 (1977) (explaining that under Md. Rule 756(g)—the predecessor to Md. Rule 4–325(e)—the Court of Appeals has independent discretion to take cognizance of plain error in jury instructions).

words, the legal landscape at the time this issue should have been raised on direct appeal was far different from what it is today. Indeed, we can find no reported Maryland decision on the books at the time of Petitioner's trial and original appeal that addressed the reasonable doubt instruction given at his trial. These circumstances make it all the more appropriate for us to exercise our discretion to decide the merits of the claim.

Having exercised our discretion to review the instructional error, it follows from the nature of the error that Petitioner is entitled to a new trial. The judgment of the Court of Special Appeals is therefore reversed. We direct that court to vacate the judgments of the Circuit Court for Baltimore City and order a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AND RE-MAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BAL-TIMORE CITY.**

HARRELL and BATTAGLIA, JJ., Dissent.

HARRELL, J., dissenting, in which BATTAGLIA, J., joins.

I dissent. The Majority opinion takes great lengths to establish a framework within which to review unpreserved errors in a jury instruction context. Although the framework is accurate, it is applied in a conclusory and flawed manner to the circumstances of the present case.

The Majority opinion recognizes that a jury instruction may contain "troublesome language," so long as, "taken as a whole, the instructions correctly convey the concept of reasonable doubt to the jury." *Victor v. Nebraska,* 511 U.S. 1, 22, 114 S.Ct. 1239, 1251, 127 L.Ed.2d 583, 601 (1994). Despite cognizance of this cautionary Supreme Court precept, the Majority opinion focuses almost solely on two problematic phrases in

the instruction under scrutiny in the present case, finding solace in the fact that the Court of Special Appeals in *Himple v. State,* 101 Md.App. 579, 647 A.2d 1240 (1994), considered "virtually identical" language and concluded that the instruction was deficient constitutionally. The trouble is that the *Himple* Court did not rely on or even cite *Victor,* let alone view the jury instructions in that case as a contextual whole. Thus, in the final analysis, the Majority opinion here does not practice what it preaches, instead averting its glance (with *Himple*-glazed eyes) from the present instruction viewed in its entirety.

I conclude that the judgment of the Court of Special Appeals in Savoy's case should be affirmed. Because the error in the subject jury instruction was not plain and material (i.e., not deficient constitutionally), Petitioner was required to object contemporaneously at trial to preserve his appellate challenge. He did not. Therefore, the error in the jury instruction is ineligible for discretionary review by an appellate court, and a new trial is unfounded.

## I. The Majority Opinion's Plain Error Analysis

The Majority correctly identifies Maryland Rule 4–325(e) as the starting point for analyzing the present case. Majority op. at 293, 22 A.3d at 850. The Rule provides:

No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite the failure to object.

According to its plain reading, no unpreserved error—even one of constitutional dimension—yields automatic reversal. Rather, any error to which a defendant did not object contemporaneously may be subject to plain error review. An appel-

late court, at its discretion, may opt to review "any plain error in the instructions, material to the rights of the defendant, despite a failure to object." Md. Rule 4–325(e).

## A. *The Presence of Error*

To qualify for potential review, Petitioner must demonstrate first that an error exists. In the present case, the State concedes, and the Majority opinion agrees, that errors appear in the jury instruction, which reads as follows:

[T]he defendant is presumed innocent of the charges until proven guilty beyond a reasonable doubt and to a moral certainty. He comes into court clothed with the presumption of innocence, which remains with him from the beginning to the end of the trial as though it were testified to and supported by evidence that the defendant is innocent.

The burden of proving the defendant guilty is upon the prosecution from the beginning to the end of the trial for every element of the crime charged. The defendant has no burden to sustain and does not have to prove his innocence.

The charges against the defendant are not evidence of guilt. They are merely complaints to let you and the defendant know what the charges are.

After the jury has fairly and carefully reviewed all the evidence in this case, if you feel that the prosecution has failed to prove beyond a reasonable doubt and to a moral certainty all of the evidence necessary to convict, then you must acquit the defendant.

The test of reasonable doubt is that the evidence that the State produced must be so convincing that *it would enable you to act on an important piece of business in your every day life.* The words "to a moral certainty" do not mean an absolute or mathematical certainty but *a certainty based upon convincing grounds of probability.* The phrase 'beyond a reasonable doubt' does not mean beyond any doubt or all possible doubt. But[,] as the words indicate, beyond a doubt that is reasonable.

You are further instructed that the burden is on the State to prove beyond a reasonable doubt not only that the offenses were committed, but that the defendant is the person who committed them.

(Emphasis added.)

The Majority opinion identifies two particular problems with this instruction: (1) the omission of the qualifying words "without reservation" appended to the phrase "in your every day life,"[1] and (2) the use of the phrase "convincing grounds of probability" to define "moral certainty." Majority op. at 252, 22 A.3d at 857. The Majority opinion concedes, however, that the omission of "without reservation" is "not alone fatal." Majority op. at 254, 22 A.3d at 858; *see Himple*, 101 Md.App. at 582–83, 647 A.2d at 1242 (1994) (holding that failing to include the "without reservation" language "itself would not necessarily constitute 'plain error' ").

### B. *Was The Error Plain and Material Because It Was Constitutionally Deficient?*

The second step in securing appellate review of an unobjected-to instruction is the establishment of the error as both "plain" and "material." An appellate court should consider exercising its discretion to review the jury instruction if an error is "compelling, extraordinary, exceptional or fundamental to assure the defendant a fair trial." *State v. Hutchinson*, 287 Md. 198, 202–03, 411 A.2d 1035, 1038 (1980). Stated more definitively, the instruction constitutes plain and material error (and is, therefore, susceptible to review at the discretion of an appellate court) if there is a reasonable chance that the jury would apply the instruction in a manner inconsistent with the Constitution. *See Estelle v. McGuire*, 502 U.S. 62, 72, 112

---

1. In the Majority opinion's eyes, the sentence should have read: The test of reasonable doubt is that the evidence that the State produced must be so convincing that it would enable you to act on an important piece of business in your every day life *without reservation.*

S.Ct. 475, 482, 116 L.Ed.2d 385, 399 (1991) (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316, 329 (1990)).[2]

In the present case, the Majority opinion establishes plain and material error by deeming the jury instruction "constitutionally deficient." Majority op. at 247, 22 A.3d at 854. According to the Majority, the instruction misrepresented the reasonable doubt standard, i.e., reduced the State's burden of proof. Because "failure to instruct the jury of the requirement of reasonable doubt is never harmless," *Wills v. State*, 329 Md. 370, 376, 620 A.2d 295, 298 (1993), the Majority opinion holds that the erroneous jury instruction vitiates the conviction and Petitioner must be awarded a new trial. *See Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182, 189 (1993) (holding that a constitutionally deficient instruction discredits the conviction).[3]

---

**2.** Not all errors in a reasonable doubt jury instruction constitute constitutional deficiency. *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 1242–43, 127 L.Ed.2d 583, 590 (1994). The above standard determines which reasonable doubt errors are eligible for discretionary review as constitutionally deficient.

**3.** Because the Majority opinion decided that the error was constitutionally deficient, it was able to determine, as a matter of rote, that the error was also structural in nature, such that a harmless error analysis was inapposite. Majority op. at 247, 22 A.3d at 854 ("If ... we determine that the reasonable doubt instruction was constitutionally deficient, then the error is structural and defies analysis by harmless error standards."). A constitutional deficiency is classified as a structural error because it affects the entire trial process. *See Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331–32 (1991). An inadequate jury instruction "necessarily render[s] a trial fundamentally unfair." *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460, 470 (1986). Therefore, prejudice against the defendant is presumed and reversal of the conviction is mandated. *See Fulminante*, 499 U.S. at 310, 111 S.Ct. at 1265, 113 L.Ed.2d at 331 (stating that a criminal trial cannot accurately determine guilt or innocence if there is a structural error present).

Structural error is distinct from a "trial error," which is evaluated using the harmless error standard: the defendant must prove prejudice, then the severity of the error is quantified to determine whether a new trial ought to be granted. *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. at 1263–64, 113 L.E.2d. at 329–30.

To support its holding, the Majority opinion analogizes this case to two others—*Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) and *Himple*—in which reasonable doubt instructions were deemed constitutionally deficient. The Majority opinion also attempted to minimize the relevance of *Victor*, in which the flawed instructions were upheld as constitutional.

### 1. *Cage and Himple*

In only one previous case, *Cage*, has the Supreme Court reversed a defendant's conviction because the reasonable doubt instruction as given was unconstitutional. *See Cage*, 498 U.S. at 41, 111 S.Ct. at 330, 112 L.Ed.2d at 342. In *Cage*, the problematic portion of the jury instruction was as follows:

> This doubt must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as would give rise to a *grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. It is an *actual substantial doubt*.

*Id.* (emphasis added). The Court held that the instruction did not emphasize adequately the reasonable doubt standard or the "evidentiary certainty" required to convict the defendant. *Id.* Instead, the instruction as given permitted "a finding of guilt based on a degree of proof below that required by the Due Process Clause." *Id.*

The Majority opinion here also relies heavily on *Himple*, in large part because the instruction in that case resembles closely the instruction in the present case. The instructions in *Himple* read:

> [T]he defendant is presumed innocent of the crimes charged until proven guilty beyond a reasonable doubt to a moral certainty.... [He] comes into Court clothed with this presumption of innocence, which remains with him from the beginning to the end of trial, as to each element of the crimes charged.

The burden of proving the defendant guilty is upon the prosecution from the beginning to the end of the trial. The defendant has no burden to sustain, does not have to prove his innocence.

\* \* \*

The test of reasonable doubt is the evidence that the State has produced must be so convincing that *it would enable you to act on an important piece of business in your everyday life.* The words, to a moral certainty, do not mean absolute or mathematical certainty, but *a certainty based upon a convincing ground of probability.* The phrase beyond a reasonable doubt, does not mean beyond any doubt or all possible doubt, but, as the words indicate, beyond a doubt that is reasonable.

You are further instructed that the burden is on the state to prove beyond a reasonable doubt not only that the offenses were committed, but that the defendant is the person who committed them.

Brief for the Appellant, *Himple v. State,* 101 Md.App. 579, 647 A.2d 1240 (1994) (Ct.Spec.App.1995) (No.1911, Sept. Term 1993) (Appendix). The Court of Special Appeals deemed the instructions deficient constitutionally for reasons similar to those expressed in *Cage. Himple,* 101 Md.App. at 582–83, 647 A.2d at 1242. The instruction "equat[ed] a convincing ground of probability to reasonable doubt" and, thereby, lowered the burden of proof required to convict the defendant. *Id.*

### 2. *Victor*

Early on, the Majority opinion highlights correctly that:

The Due Process Clause of the Fourteenth Amendment to the United States Constitution requires the State to prove every element of a offense charged beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364[, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375] (1970). The Constitution, however, "does not require that any particular form of words be used in advising the jury of the government's burden of proof. . . . Rather, taken as a whole, the instruc-

tions [must] correctly convey the concept of reasonable doubt to the jury." *Victor,* 511 U.S. at 5[, 114 S.Ct. at 1243, 127 L.Ed.2d at 590] (upholding reasonable doubt instruction as constitutionally sound despite troublesome language, because after examining instruction in its entirety, there was no reasonable likelihood that the jury misunderstood the standard of proof beyond a reasonable doubt) (quoting *Holland v. United States,* 348 U.S. 121, 140[, 75 S.Ct. 127, 138, 99 L.Ed. 150, 167] (1954)). *Accord Merzbacher v. State,* 346 Md. 391, 401, 697 A.2d 432, 437 (1997) (We review the trial court's "explanation of reasonable doubt as a whole; [we cannot] determine the propriety of an explanation from an isolated statement[, but must] view [ ] the effect of a suspect statement on the jury in light of the entire explanation." (quoting *Wills,* 329 Md. at 384, 620 A.2d at 302)).

The inquiry is " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire,* 502 U.S. 62, 72[, 112 S.Ct. 475, 482, 116 L.Ed.2d 385, 390] (1991) (quoting *Boyde v. California,* 494 U.S. 370, 380[, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316, 329] (1990)).

Majority op. at 245–47, 22 A.3d at 853–54.

Applying these principles to the present case, the Majority opinion concluded, "much as did the Court of Special Appeals in analyzing the virtually identical reasonable doubt instruction in *Himple,*" that:

[T]he instruction given at Petitioner's trial was constitutionally deficient. Aside from the troublesome use of the phrase "moral certainty," *see Victor,* 511 U.S. at 16[, 114 S.Ct. at 1248, 127 L.Ed.2d at 596–97], the instruction lacks the curative language present in *Victor* that would permit us to overlook the problematic language of "convincing grounds of probability." Looking for context to the words immediately surrounding the problematic language in the instruction, we find no words explaining or refining the phrase "a convincing ground of probability" that give some assurance that the jury understood the concept of proof beyond a reasonable doubt as requiring more than a mere

"probability." *See Himple,* 101 Md.App. at 582–83, 647 A.2d at 1242. That error alone renders the instruction constitutionally deficient.

Majority op. at 253–54, 22 A.3d at 858–59 (footnote omitted). For good measure, the Majority opinion cites also the omission of the phrase "without reservation," which although "not alone fatal," supports the taken inference that there is a reasonable likelihood the jury employed a standard of proof lower than reasonable doubt. Majority op. at 253–54, 22 A.3d at 858–59.

## II. The Majority Opinion's Tunnel Vision

### A. *Victor* Should Not Be Set Aside So Easily

Although the use of problematic phrases is not encouraged, their presence may not warrant a new trial if the surrounding context ensures that a jury will apply correctly the concept of reasonable doubt. *Victor,* 511 U.S. at 20, 114 S.Ct. at 1250, 127 L.Ed.2d at 599 ("[A]ny ambiguity ... is removed by reading the phrase in context...."). This is the case particularly when the instruction provides "an alternative definition of reasonable doubt." *Id.*

Although the Majority opinion employs the phrase "taken as a whole" in numerous instances, it seems to derive from *Victor* that a flawed instruction may be remedied only by curative language immediately preceding or following the flawed portion of the instruction. Majority op. at 254, 22 A.3d at 858 ("Looking for context to the words immediately surrounding the problematic language in the instruction, we find no words explaining or refining the phrase 'a convincing ground of probability'.... That error *alone* renders the instruction constitutionally deficient." (emphasis added) (citation omitted)). The Supreme Court in *Victor,* however, did not evaluate only the language in nearest proximity to the troublesome passage, but "the rest of the instruction given in [the] case," which "lends content to the [subject] phrase." *Victor,* 511 U.S. at 14, 114 S.Ct. at 1247, 127 L.Ed.2d at 596. In the final analysis, the *Victor* Court was persuaded by the fact that, within the instruction (but not immediately before or after the pertinent

language), the trial judge provided an "alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act." *Victor*, 511 U.S. at 20, 114 S.Ct. at 1250, 127 L.Ed.2d at 599.

In the present case, there is language present both immediately following the problematic phrase, as well as earlier in the instruction, that mitigates the presence of the principal problematic phrase. Indeed, the words " 'to a moral certainty' . . . mean . . . a certainty based upon convincing grounds of probability" were flanked by sufficiently curative language, such that any concern over misinterpretation or misconception was dispelled. Immediately following the phrase "convincing grounds of probability," the trial court provided an alternative definition of the applicable standard, explaining that: "The phrase 'beyond all reasonable doubt' does not mean beyond *any* doubt or *all possible* doubt. But[,] as the words indicate, beyond a doubt that is reasonable." (Emphasis added); *see Victor*, 511 U.S. at 5, 114 S.Ct. at 1242–43, 127 L.Ed.2d at 590 (upholding a flawed instruction because, taken together, the instruction did not convey to the jury "that the doubt must be anything but a reasonable one"). This language requires that the jury maintain an appropriate sense of what is "reasonable" in evaluating the case. The phrases "beyond any doubt" and "beyond . . . all possible doubt" indicate to the jury that the standard of proof is high, and that it be convinced beyond most doubts—that is, all reasonable doubts—before convicting Savoy. It is not likely that a jury would overlook these remonstrances and misinterpret the instructions as calling for "anything but" a personal and moral satisfaction of any reasonable doubts before finding guilt. *See Wills*, 329 Md. at 382–83, 620 A.2d at 301 (1993) (explaining that "[o]ur opinions have refrained from adopting a boiler plate explanation of reasonable doubt" and that "the explanation should . . . bring home to the jury clearly that . . . the [guilt] of the accused must be proved *beyond* a reasonable doubt").

Any possibility that the jury interpreted unconstitutionally the reasonable doubt instruction as given is extinguished when it is viewed as a whole, rather than a series of isolated and

dissected phrases and sentences. Upon issuing the instruction, the trial court first informed the jury that Savoy

comes into court clothed with the presumption of innocence, which remains with him from the beginning to the end of the trial as though it were testified to and supported by evidence that the defendant is innocent. The burden of proving the defendant guilty is upon the prosecution from the beginning to the end of the trial for every element of the crime charged. The defendant has no burden to sustain and does not have to prove his innocence.

Imbued with this knowledge, the jury would interpret properly the phrase "convincing grounds of probability." Anything less than a moral conviction—close to, but not necessarily an absolute or mathematical certainty—is insufficient to rebuff the defendant's presumed innocence. Stated another way, before evaluating the evidence, the defendant stands as innocent. To make a finding of guilt, the jury must travel the entire probability spectrum until it arrives, convinced, at the opposite conclusion.

## B. *Himple* Is Flawed Fatally

The *Victor* Court's explication of the importance of a holistic review of reasonable doubt jury instructions predates *Himple.* *See Victor* (decided 22 March 1994); *Himple* (decided 28 September 1994). Yet, the *Himple* Court failed to take *Victor* into account. In its opinion, the *Himple* Court referenced only a small portion of the subject instruction there—honing in narrowly on two problematic phrases in the instruction while disregarding the rest. Nevertheless, despite its suspect value given this omission, *Himple* becomes the Majority's mainstay in order to conclude that the phrase "convincing grounds of probability" erased all of the qualifying and explanatory instructions the jury heard previously and thereafter, such that the problematic phrase stood alone.

## C. *Cage*

In *Cage,* the trial court had informed the jury that a reasonable doubt is an "actual substantial doubt," one that

gives rise to a "grave uncertainty. . . ." *Cage,* 498 U.S. at 40, 111 S.Ct. at 329, 112 L.Ed.2d at 342. The instruction in *Cage* stands in stark contrast to the instruction in the present case. Undoubtedly, the phrase "convincing grounds of probability" is not the most accurate description of the reasonable doubt standard and, taken in isolation, may produce an instructional shortcoming. Unlike *Cage,* however, the phrase here was not so immediately severe and misleading, was prefaced with a contextual instruction about the presumed innocence of the defendant (i.e., the starting point of any jury deliberations), and was followed by an alternate definition of the standard of proof.

The trial court here did not suggest that, to acquit, the jury must possess an actual substantial doubt or a grave uncertainty; rather, the trial court stated clearly that Savoy was, by dint of legal entitlement, innocent at all times during the trial, and that the jury must acquit if the State's evidence does not address all those doubts that are reasonable or produce a certainty that, while not necessarily mathematical or absolute in nature, is personally and morally satisfying. ("[I]f you feel that the prosecution has failed to prove beyond a reasonable doubt and to a moral certainty all of the evidence necessary to convict, then you must acquit the defendant.") Such contextual and curative language, absent in *Cage,* ensured that the instruction in the present case conveyed properly the "evidentiary certainty," *See Cage,* 498 U.S. at 41, 111 S.Ct. at 330, 112 L.Ed.2d at 342, required to convict Savoy, allowing a finding of guilty only upon a degree of proof *beyond a reasonable doubt.*

While the reasonable doubt standard is "an ancient and honored aspect of our criminal justice system," it "defies easy explication." *Victor,* 511 U.S. at 5, 114 S.Ct. at 1242, 127 L.Ed.2d. at 590. The U.S. Constitution "does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id.* Rather, the judiciary is charged with preventing "against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Taylor v. Kentucky,* 436 U.S.

478, 485–86, 98 S.Ct. 1930, 1935, 56 L.Ed.2d 468, 475 (1978) (quoting *Estelle*, 425 U.S. at 503, 96 S.Ct. at 1693, 48 L.Ed.2d at 130).

In the present case, the Court of Special Appeals declined properly to take cognizance of plain error in the unpreserved jury instruction. Although there was error in the subject jury instruction, it was not plain and material, given the fact that the instruction, taken as a whole, conveyed adequately the reasonable doubt standard to the jury. Accordingly, Petitioner should not be granted a new trial.

Judge BATTAGLIA has authorized me to state that she joins in the views expressed in this dissenting opinion.