*State of Maryland v. Michael Robb*, No. 837, September Term, 2024. Opinion by Kenney, J. Filed April 3, 2026.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — WAIVER:**
Code, Criminal Procedure Article ("CP"), § 7-106(b)(1), provides that, subject to narrow exceptions, "an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation . . . before trial, at trial," or "on direct appeal, whether or not the petitioner took an appeal," as well as "in any other proceeding that the petitioner began." Subsection (b)(2) provides that where a petitioner could have but failed to make an allegation of error at a prior proceeding, "there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation."

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — WAIVER:**
Section 7-106(b) is generally applicable only to the rights that are subject to the knowing and voluntary waiver standard articulated in *Johnson v. Zerbst*, 304 U.S. 458 (1938), and its progeny. *Curtis v. State*, 284 Md. 132, 149 (1978). Other situations beyond the scope of CP § 7-106(b), are "to be governed by case law or any pertinent statutes or rules[,]" and "[t]actical decisions, when made by an authorized competent attorney, as well as legitimate procedural requirements, will normally bind a criminal defendant." *Id.* at 149-50.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — WAIVER:**
"Many claims, even those alleging the violation of a fundamental right, are waived if not raised at trial or on direct appeal." *State v. Brand*, 265 Md. App. 112, 155, *cert. denied*, 491 Md. 639 (2025). Among the rights that are waived if not raised at trial or on direct appeal are the right to a constitutionally adequate reasonable doubt jury instruction, *State v. Rose*, 345 Md. 238 (1997), the right to challenge purportedly disqualified jurors, *Hunt v. State*, 345 Md. 122 (1997), the right of the defendant to be present at bench conferences involving examination of jurors or prospective jurors, *Williams v. State*, 292 Md. 201 (1981), and the right to challenge a trial court's decision about whether to propound a voir dire question. *Foster v. State*, 247 Md. App. 642, 647 (2020), *cert. denied*, 475 Md. 687 (2021).

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF POSTCONVICTION COUNSEL — DEFICIENT PERFORMANCE — DEFENDANT SELF-REPRESENTED AT TRIAL:** Postconviction counsel does not perform deficiently by not raising claims that have virtually no prospect of succeeding because they were waived when not raised at trial and on direct appeal.

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — INEFFECTIVE ASSISTANCE OF POSTCONVICTION COUNSEL — UNDERLYING STRUCTURAL ERROR — PREJUDICE:** Even where a defendant is represented at trial by counsel, and trial counsel's deficient performance results in an underlying structural error, prejudice is not generally presumed in a postconviction proceeding. *Weaver v. Massachusetts*, 582 U.S. 286 (2017); *Ramirez v. State*, 464 Md. 532 (2019); *Newton v. State*, 455 Md. 341 (2017).

**CRIMINAL PROCEDURE — POSTCONVICTION PROCEDURE — UNDERLYING STRUCTURAL ERROR — PREJUDICE GENERALLY NOT PRESUMED:** We have not been directed to, nor are we aware of, any controlling appellate decisions holding that the failure to ensure a defendant's presence at bench conferences or that propounding prejudicial or legally erroneous voir dire questions constitute structural error, and the decisions touching on these issues suggest otherwise. Even if the underlying errors alleged in this case were structural error, prejudice would have to be proven rather than presumed. *Weaver*, 582 U.S. at 300-01; *Ramirez*, 464 Md. at 541, 577; *Newton*, 455 Md. at 356-57; *Brand*, 265 Md. App. at 161.

Circuit Court for Montgomery County
Case No. 126646C

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 837

September Term, 2024
_____

STATE OF MARYLAND

v.

MICHAEL ROBB
_____

Berger,
Arthur,
Kenney, James A., III
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Kenney, J.
_____

Filed: April 3, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

*Tang, Rosalyn J. did not participate in the Court's decision to designate this opinion for publication pursuant to Md. Rule 8-605.1.

In 2015, a jury in the Circuit Court for Montgomery County found appellee, Michael Robb, who represented himself at the trial, guilty of two counts of attempted murder in the second degree, two counts of robbery with a dangerous weapon, two counts of attempted robbery with a dangerous weapon, and four counts of conspiracy to commit robbery with a dangerous weapon. The court sentenced him to terms of incarceration totaling seventy years. Mr. Robb failed to perfect an appeal.

Mr. Robb, assisted by counsel, unsuccessfully sought postconviction relief. He, with new counsel, later moved to reopen his postconviction proceeding based on a due process violation at his trial and the ineffective assistance of postconviction counsel for failing to challenge those violations in his initial postconviction proceeding. The postconviction court granted his motion to reopen and ordered a new trial. This Court granted the State's application for leave to appeal. As we explain below, we will reverse the postconviction court and reinstate Mr. Robb's convictions.

## BACKGROUND

### The Crimes

Mr. Robb was tried with a codefendant, Rupert Stamps.[1,2] We adopt the factual summary from the unreported opinion in Mr. Stamps's direct appeal:

---

[1] At various points in the record, including his self-represented filings, Mr. Stamps's forename is sometimes spelled "Ruppert." We will spell it "Rupert" in accordance with the MDEC caption in his direct appeal.

[2] Initially, Mr. Robb was to be tried with two codefendants, Mr. Stamps and Hazlee Narce, but Mr. Narce moved to sever his trial from that of his codefendants, and the circuit court granted his motion.

At Sweeney Building Services in Gaithersburg, armed robberies took place on August 14, 2014, and November 6, 2014. In the first robbery, two masked gunmen stole $37,500 in cash, but neither victim was harmed. After police received a 911 call reporting that two masked men left that robbery in a grey or silver Dodge Durango, their trail went cold. In the second robbery, two masked men shot their way into the office and wounded two employees, but fled with nothing. Witnesses working at neighboring businesses observed two men running to a green Ford Explorer. One individual pursued that vehicle, called 911, and reported the license plate number.

Investigators identified Regina Mitchell as the owner of the Explorer and tied her to the second robbery through surveillance footage and cell phone records. Ms. Mitchell eventually admitted to acting as the driver in both robberies. In a statement to Montgomery County Police Detective Paris Capalupo, she implicated Stamps, whom she had dated "off and on" since June, among four co-conspirators. Stamps, Mitchell, and three others were arrested and charged in the two robberies.

In a four-day trial, the State established that the first robbery was committed with "inside" information provided by Kervon Noel, a vendor for Sweeney Building Services ("SBS"), which is a janitorial services business. Noel was a friend of Regina Mitchell's son. Noel met Stamps at Mitchell's house, and the two exchanged phone numbers. After Mitchell's son declined to participate in Noel's plan to rob SBS, Noel recruited Stamps, who in turn brought in Ms. Mitchell and the two men who eventually committed both robberies, Michael Robb and Hazlee Narce.

Noel targeted his boss, who regularly arrived at the office in a black Toyota truck between 9 and 10 a.m. with cash to pay vendors. Regina Mitchell recounted that the night before the August 14, 2014, robbery, Stamps drove his grey Dodge Durango to the Gaithersburg office of SBS, discussing the robbery plans with Noel, Robb, Narce, and Mitchell along the way. After this scouting trip, the group returned to Ms. Mitchell's apartment, where they stayed overnight.

Early the next morning, Ms. Mitchell dropped Stamps off at a Metro station so that he could get to his job at a retail store in Washington, D.C. Driving Stamps's vehicle, Ms. Mitchell returned to SBS, where Michael Robb and [Hazlee] Narce robbed employees David Rollins and Janice Ray of approximately $37,500.

Ms. Mitchell then met Stamps for lunch at a fast food restaurant at the Maryland-D.C. line. When she gave Stamps $3,500 as his share of the

2

robbery proceeds, he was angry and dissatisfied with that amount. He eventually obtained an additional $1,000 from Noel.

Three months later, Stamps, Robb, and Narce planned a second robbery of SBS. In an ill-fated decision, they excluded Noel, who could have informed them that in the wake of the August robbery, SBS had begun paying vendors by check. Unaware that there would be no payroll cash, the group proceeded with their plans.

Although Mitchell had not heard from Stamps for more than a month, she received a call from him shortly after 5 a.m. on a rainy November 6, 2014. Stamps's car had broken down, so he called Mitchell to ask her to pick him up on Georgia Avenue. When she arrived, Robb and Narce were with Stamps. The group returned to Mitchell's new apartment on Randolph Road. Stamps told Mitchell to give Robb and Narce "a ride to Gaithersburg" that morning, which she understood to mean they would be returning to SBS. She then took Stamps to the Glenmont Metro station so he could go to work.

Driving her green Ford Explorer, Mitchell took Robb and Narce to SBS, where they waited several hours in the parking lot until the black Toyota truck returned to the office. While Mitchell stayed in her car, Narce and Robb attempted another robbery at SBS. Narce, who was armed with a handgun, shot through the glass front door, shattering it. Employees David Rollins and Betty Johnson were shot multiple times during the robbery; both survived. After the two robbers were told there was no cash on hand, they fled.

During the robbery, Ms. Mitchell heard at least four gunshots. Robb and Narce ran back to the Explorer. Mitchell sped away, but saw someone writing down her license plate number and another person following in a vehicle. Robb was upset with Narce, demanding to know why he did "that," referring to the shootings. When Narce said he was going to throw the gun out the car window, Mitchell locked the windows to prevent him from tossing the weapon near the elementary school they were passing. Ms. Mitchell dropped the two men off at the Shady Grove Metro stop, then returned to her home.

Mitchell called Stamps, who told her he would "handle" Narce "because [he] was crazy." Stamps came over to Mitchell's residence later that day. When she expressed distress over "two people being shot" and police having her "tag number," he told her to say she had been home asleep and that her son had been driving her vehicle. The next day, they cleaned her vehicle because Narce "had been in th[e] back and he had a gun."

3

After police identified Ms. Mitchell as the owner of the getaway car, Stamps told them that her son was driving that vehicle. Mitchell's son was arrested, jailed, and charged with attempted first degree murder. Despite Ms. Mitchell's insistence that she had been the one driving her vehicle, police did not believe her until she confessed to her role in both robberies, exonerating her son and implicating Stamps, Noel, Robb, and Narce. Later, pursuant to an agreement under which the State would recommend a sentence capped at eight years if she testified truthfully against her co-conspirators, Mitchell pleaded guilty to two counts of conspiring to commit armed robbery.

*Stamps v. State*, No. 2260, Sept. Term, 2015, slip op. at 2-5 (filed Feb. 22, 2017).

### Relevant Procedural Facts

In January 2016, an indictment was filed, in the Circuit Court for Montgomery County, charging Mr. Stamps, Mr. Robb, Mr. Narce, Ms. Mitchell, and Mr. Noel for their roles in the armed robberies and attempted murders. Ms. Mitchell, pursuant to a plea agreement, testified as a State's witness at the subsequent joint trial of Mr. Stamps and Mr. Robb. *Stamps*, slip op. at 5.

Prior to trial, Mr. Robb waived counsel and thereafter represented himself during trial.[3] During a status hearing held the Friday prior to the scheduled start of trial, the trial court discussed with Mr. Robb the procedure that would be followed during jury selection:

> THE COURT: All right. Mr. Robb, you agree that two alternates is enough? Okay. So, we're going to have two alternates chosen. So, the process that we go through is one of questioning those people. And, the way that I do it is, and this is so everybody can know it, is that I ask all the questions. I ask them all together.

---

[3] When Mr. Robb filed a complaint against his appointed attorney with the Attorney Grievance Commission, the circuit court granted the attorney's motion to strike his appearance. The Office of the Public Defender offered to appoint another panel attorney, but Mr. Robb declined that offer.

I give the people a chance if there's an answer to the question, like what side the question was, have you ever been a juror in a case before? And, I wait, and they stand. And, I have them give me their numbers. And, I go through all of my questions that way. I think we have probably about 30 questions to ask.

Then, when it's all done they will come up to the bench like this, and they will then tell me what it was about their question, why they stood up to answer that question. Yes, I was a juror two years ago, and I hated it. So, I don't ever want to be a juror again, if they said something like that.

So, the lawyers approach here, the State's Attorneys do, and [Mr. Stamps's counsel] comes up, and you representing yourself, you would have that right. **Now, the problem that we get into there, and, you may want to make a decision about this, is, if you want to participate up at the bench, the sheriffs are going to have to be in close proximity. That's just their job.**

MR. ROBB: Uh-huh.

THE COURT: The reason you're being given civilian clothes, and you have that right, is because we don't want the jury to know, quite frankly, that you are incarcerated just as with your codefendant.

We make every effort to make sure the jury's out of the room at any time that you're brought in from the side door there and in any other regards. Never mentioned in any part of the case that you and your codefendant have been locked up.

So, if you approach here and you want to participate in what's called the voir dire of these jurors, you have the clear right to do that. And, you can, as I said, I do the questioning, occasionally I will allow a question if I think it's one that needs to be followed up by the State, or by [Mr. Stamps's counsel], or both. I allow them each a chance maybe to ask directly of the juror a follow up question. And, you would have that right also.

**But, again, the problem for you is that the sheriffs are going to be in proximity. Every time that you would be here, they would be coming up with you, which, I don't know if you think so, but I think that as a matter of, you know, what jurors think, just in general, that would not be a positive thing for the jurors to see. But, I leave that to you.**

**So, you can think about that over the weekend whether you want to participate in the voir dire or not.** But, if you do, if you don't, at the beginning on Tuesday I'm going to say Mr. Robb, have you thought about what we talked about? And, do you wish to participate in the voir dire at the bench? Or do you wish to waive that? And, [Mr. Stamps's counsel] will come up for his client. And, [Mr. Stamps's counsel], obviously, you have to talk to your client about whether he wants to be present. And, we'll proceed with that.

(Emphasis added.)

When the case was called the following Tuesday, the following ensued:

THE COURT: Okay. All right Mr. Stamps if you'd sit next to your counsel. Mr. Robb if you'd sit at the other table across from Mr. Stamps. That's fine. Yeah, right there is fine, whatever works. All right, the case has been called. Mr. Stamps and Mr. Robb are now in the courtroom. Mr. Robb I see that you have been able to be provided with appropriate clothing for these proceedings. Before the -- you can all be seated. Before the people who are called the juryman are brought up to go through a series of questions that I'm going to pose to them and then after the questions are completed I'm going to have those people come up here to talk with myself and at least with counsel. I want to know, and I'll start with [Mr. Stamps's counsel]. [Mr. Stamps's counsel], has your client made a decision about whether he wishes to be present or waive his presence at the voir dire?

[MR. STAMPS'S COUNSEL]: One second, Your Honor. Thank you.

THE COURT: Sure.

[MR. STAMPS'S COUNSEL]: Your Honor thank you. He's going to waive that right and rely on my responses.

THE COURT: Okay, thank you. All right Mr. Robb.

MR. ROBB: Yes Your Honor.

THE COURT: All right. Mr. Robb have you thought about the decision you want to make about being present at the voir dire process with sheriffs or if you wish to waive your participation at the bench in the voir dire. Have you made a decision about what you want to do?

MR. ROBB: **I don't need to be at the bench.**

6

THE COURT: Okay. **Then the record will reflect that Mr. Robb has waived his right to be present at the inquiry at the bench for the voir dire.**

(Emphasis added.) Mr. Robb did not request any voir dire questions.

Among the voir dire questions asked by the trial court were compound "strong feelings" questions:

> The State in this case alleges that Ruppert Stamps and Michael Robb were involved in two separate armed robberies of Sweeney Building Services employees located at 18931 Premier Court, Gaithersburg. These robberies occurred on August 14th, 2014 and November 6, 2014. The State alleges that during the August robbery the defendants were able to steal approximately $37,000. During the November robbery, two Sweeney employees, Betty Johnson and David Rollins were each shot multiple times. Does any member of the panel have such strong feelings about these circumstances and the crimes charged that it would be difficult to impartially weigh the facts in this trial?
>
> * * *
>
> Okay, does any member of the panel have political, religious or philosophical beliefs about our system of criminal justice which might interfere with your ability to sit as a fair and impartial juror in this case?
>
> * * *
>
> Does any member of the panel have strong feelings or beliefs regarding the criminal laws of this state or the United States which would make it difficult or impossible to render a fair and impartial verdict in this case based solely on the evidence and the law as I will instruct you?

After the trial court had finished asking its voir dire questions, it convened a bench conference to afford the parties an opportunity to make any objections. The following colloquy occurred:

> [PROSECUTOR]: Would you like Mr. Robb to be present for this or, I know this is not a juror approach but I just wanted to –

7

THE COURT: Well we're going to have the sheriff come up and I'm going [sic] let him sit right where he is. I've provided him with the questions and the juror sheet as I've provided all counsel contrary to my earlier statements.

[PROSECUTOR]: Okay, thank you for that Your Honor.

No one objected to the compound "strong feelings" questions.

As previously stated, the jury found Mr. Robb guilty of two counts of armed robbery, two counts of attempted armed robbery, two counts of attempted murder, and four counts of conspiracy to commit armed robbery. Prior to sentencing, Mr. Robb filed a notice of appeal. After imposing sentences, the trial court advised Mr. Robb of his right to file a notice of appeal,[4] which he did not do. In 2016, we dismissed his prior appeal because "it [was] a premature appeal from a non-final judgment."

Thereafter, Mr. Robb filed the first of several self-represented postconviction petitions.[5] Those petitions were subsequently supplemented by an "Amended Petition" that was filed by appointed counsel. In the amended petition, Mr. Robb raised a single claim—that he had been denied his Sixth Amendment right to the effective assistance of counsel in perfecting his appeal. According to Mr. Robb, he had written to the Office of the Public Defender to request an attorney to assist in his appeal, but because he did not receive a

---

[4] The court merged all the conspiracy counts with those for the corresponding substantive crimes. It imposed consecutive sentences of fifteen years' imprisonment for each count of attempted second-degree murder, and ten years' imprisonment for each count of armed robbery/attempted armed robbery.

[5] In two of his self-represented petitions, Mr. Robb claimed a *Hicks* violation, and in the third, he sought DNA testing of physical evidence.

8

timely response, his appeal was not filed timely. The postconviction court denied the supplemental petitions. We denied his application for leave to appeal, and the Supreme Court of Maryland denied his petition for writ of certiorari.

In 2021, Mr. Robb, through counsel, moved to reopen his postconviction proceeding. In that motion, which was later amended, he alleged that:

> I. His right to due process was violated when the prosecutor failed to object to the false testimony given by Regina Mitchell and postconviction counsel was ineffective for failing to raise this issue.
>
> II. The trial court denied him the constitutional right to an impartial jury by asking improper questions during voir dire and postconviction counsel was ineffective for failing to raise this issue.
>
> III. He was denied his constitutional right to due process, to a fair and impartial jury, and to be present at all critical stages when the court would only permit his presence at the bench during voir dire when accompanied by a sheriff.
>
> IV. The trial court denied his constitutional right to an impartial jury by not requiring his presence at the bench when the jurors were individually questioned and postconviction counsel was ineffective for failing to raise this issue.

The State opposed the motion and contended that postconviction counsel was not ineffective because all the underlying claims of error had been waived. To the merits of his claims, the State contended that Ms. Mitchell's testimony was not false; that he failed to establish that he was prejudiced by the use of improper voir dire questions; that his choice to remain at trial table during voir dire was no basis for reopening his postconviction proceeding; and that postconviction counsel had no grounds for raising a claim based on Mr. Robb's decision to waive his presence during voir dire.

9

Following a hearing, the postconviction court issued a Memorandum Opinion and Order granting Mr. Robb's motion to reopen and awarding him a new trial. The court concluded that he had not knowingly and intelligently waived his right to be present at bench conferences during jury selection; that his failure to perfect his direct appeal was not a knowing and intelligent waiver of his right to be present at those bench conferences; that he did not knowingly and intelligently waive his challenge to impermissible compound questions during voir dire by failing to object at trial; that postconviction counsel performed deficiently in failing to raise claims based upon the flawed voir dire process and compound questions; that the deprivation of Mr. Robb's right to be tried by an impartial jury "unquestionably qualifies as structural error"; and that Mr. Robb was "presumptively prejudiced by counsel's unprofessional errors."[6]

The State filed an application for leave to appeal that contends that the postconviction court erred in concluding that Mr. Robb had not waived his underlying claims concerning his presence at bench conferences and voir dire questions, and in presuming that he suffered prejudice from postconviction counsel's purported deficient performance in failing to raise those waived claims. We granted the application and transferred the matter to the regular appellate docket.

---

[6] In addition, the postconviction court found that Mr. Robb waived his claim concerning Ms. Mitchell's purportedly false testimony. Because Mr. Robb does not challenge that finding in his brief, it is not before us in this appeal.

## DISCUSSION

### Parties' Contentions

The State contends that the postconviction court erred in finding that postconviction counsel performed deficiently, either in failing to raise a claim based on Mr. Robb's absence from bench conferences during voir dire or in failing to raise a claim based on the compound questions asked during voir dire. According to the State, both claims of error had been procedurally defaulted, and the postconviction court erred in applying the knowing and voluntary standard to conclude otherwise. Thus, the State maintains that postconviction counsel did not perform deficiently by failing to raise these defaulted claims. The State further contends that the postconviction court erred in presuming prejudice.

Mr. Robb contends that the postconviction court correctly "found numerous errors" and awarded him a new trial. He argues that the trial court denied him due process, a fair and impartial jury, and the right to be present at critical stages of his trial, and that postconviction counsel was deficient in failing to raise these claims in his original postconviction proceeding. He further asserts that postconviction counsel was deficient in failing to raise a claim based upon the trial court's propounding of improper compound questions during voir dire, and that this error resulted in a trial that was "fundamentally unfair and unreliable[,]" which established prejudice.

### Standard of Review

"We review the postconviction court's factual findings for clear error, but we review without deference its 'conclusions of law, including a conclusion as to whether the

petitioner received ineffective assistance of counsel.'" *State v. Brand*, 265 Md. App. 112, 144 (quoting *Ramirez v. State*, 464 Md. 532, 560 (2019)), *cert. denied*, 491 Md. 639 (2025).

### Ineffective Assistance of Counsel

"The Sixth Amendment to the Constitution of the United States, applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees to an accused the right to assistance of counsel. Article 21 of the Maryland Declaration of Rights provides a commensurate guarantee." *Id.* In addition, the Maryland Public Defender Act confers a statutory right to counsel that extends beyond the constitutional guarantee. *See, e.g.*, *State v. Flansburg*, 345 Md. 694, 699-703 (1997). In particular, it guarantees a right to counsel in an initial postconviction proceeding. Md. Code (2001, 2018 Repl. Vol.), Criminal Procedure Article ("CP"), §§ 7-108(a), 16-204(b)(1)(iii); *Stovall v. State*, 144 Md. App. 711, 715, *cert. denied*, 371 Md. 71 (2002). Whatever its source, "the right to counsel means the right to the effective assistance of counsel." *Flansburg*, 345 Md. at 703. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

"We apply 'a two-part test to determine when counsel's actions violate a defendant's . . . right to effective assistance of counsel.'" *Brand*, 265 Md. App. at 145 (quoting *Blake v. State*, 485 Md. 265, 292 (2023)). "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. This requires showing that counsel's representation "fell below an objective standard of reasonableness" and that

12

the errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687-88. "Second, the defendant must show that the deficient performance prejudiced the defense[,]" which requires showing counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Underlying our review is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. To avoid "the distorting effects of hindsight," we "reconstruct the circumstances of counsel's challenged conduct" and evaluate it "from counsel's perspective at the time." *Id.* at 689. We "then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

Generally, to establish prejudice, "a defendant claiming a violation of his right to counsel because of attorney error 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Brand*, 265 Md. App. at 146 (quoting *Strickland*, 466 U.S. at 694). A reasonable probability "is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

13

Prejudice is "presumed" only under "narrow circumstances." *Brand*, 265 Md. App. at 146 n.19. "The Supreme Court of the United States has identified three circumstances where prejudice may be presumed: actual denial of counsel, constructive denial of counsel, and counsel's actual conflict of interest." *Id.* (citing *Strickland*, 466 U.S. at 692 (stating that an "[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice")). In regard to an actual conflict of interest, prejudice is presumed where a defendant can demonstrate counsel's active representation of actual conflicting interests "'adversely affected his lawyer's performance[.]'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).[7] *Accord Ramirez*, 464 Md. at 574-75.

It is important, however, that a court keep in mind that the aforementioned principles "do not establish mechanical rules." *Strickland*, 466 U.S. at 696. Although they guide the ineffectiveness of counsel decision-making process, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* The defendant bears the burden of proving both a deficient performance by counsel and that the deficient performance prejudiced the defense. "[T]he failure to establish either . . . must result in the denial of his claim." *Brand*, 265 Md. App. at 146 (citing *Strickland*, 466 U.S. at 697). Thus, when it "is easier to dispose of an ineffectiveness claim on the ground of

---

[7] We note that the Supreme Court of Maryland "has identified (as a matter of Maryland law) one additional circumstance where prejudice may be presumed: trial counsel's failure to file a motion for modification of sentence, despite a defendant's instruction to do so." *Brand*, 265 Md. App. at 146 n.19 (citing *Flansburg*, 345 Md. at 705).

14

lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

## Waiver in the Postconviction Context

Section 7-106 of the Maryland Uniform Postconviction Procedure Act provides in relevant part:

(b)(1)(i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:

1. before trial;

2. at trial;

3. on direct appeal, whether or not the petitioner took an appeal;

4. in an application for leave to appeal a conviction based on a guilty plea;

5. in a habeas corpus or coram nobis proceeding began by the petitioner;

6. in a prior petition under this subtitle; or

7. in any other proceeding that the petitioner began.

(ii) 1. Failure to make an allegation of error shall be excused if special circumstances exist.

2. The petitioner has the burden of proving that special circumstances exist.

(2) When a petitioner could have made an allegation of error at a proceeding set forth in paragraph (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make the allegation.

CP § 7-106(b).

15

When interpreting a similar statutory provision,[8] the Supreme Court of Maryland in *Curtis v. State*, 284 Md. 132 (1978), explained that the core rights protected were those subject to the knowing and voluntary waiver standard of *Johnson v. Zerbst*, 304 U.S. 458 (1938),[9] and its progeny. *Curtis*, 284 Md. at 149. According to the *Curtis* Court, other situations are beyond the scope of the statute and are to be "governed by case law or any pertinent statutes or rules" and that "when made by an authorized competent attorney, as well as legitimate procedural requirements," tactical decisions will normally bind the defendant. *Id.* at 150. As the *Curtis* Court saw it, if the General Assembly intended to make the "intelligent and knowing" language "applicable every time counsel made a tactical decision or a procedural default occurred," the result "could be chaotic," because of repeated waiver colloquies in order "for a criminal defendant to be bound by his lawyer's actions[.]" *Id.* at 149. The *Curtis* Court concluded that the General Assembly could not have intended such an "unreasonable or illogical result." *Id.*

In *State v. Rose*, 345 Md. 238 (1997), our Supreme Court held that a claimed error in giving a purportedly unconstitutional reasonable doubt jury instruction was waived in the absence of a contemporaneous objection at trial, and therefore could not be raised in a

---

[8] The provision at issue in *Curtis* was the predecessor to the current statute and was codified at Maryland Code (1957, 1976 Repl. Vol.), Art. 27, § 645A(c).

[9] The "intelligent and knowing" standard in CP § 7-106(b) is the same as that articulated in *Zerbst*, which referred to "an intentional relinquishment or abandonment of a known right or privilege." *Zerbst*, 304 U.S. at 464. *See, e.g.*, *Curtis*, 284 Md. at 143 (citing *Machibroda v. United States*, 368 U.S. 487, 493 (1962)).

16

postconviction proceeding. *Id.* at 250. The Court rejected Rose's contention that such claims concern basic constitutional rights that preserve "fairness of a criminal trial" and "enhance the reliability of the truth determining function" to which the "intelligent and knowing waiver standard has been historically applied." *Id.* at 247 (cleaned up). Applying *Curtis*, the *Rose* Court concluded that

> simply because an asserted right is derived from the Constitution of the United States or the Constitution of Maryland, or is regarded as a "fundamental" right, does not necessarily make the "intelligent and knowing" standard of waiver applicable. Rather, most rights, whether constitutional, statutory or common-law, may be waived by inaction or failure to adhere to legitimate procedural requirements.

*Id.* at 248.[10]

Similarly, in *Hunt v. State*, 345 Md. 122 (1997), the Court, in a second postconviction proceeding, rejected challenges[11] to the seating of purportedly disqualified jurors at his trial, *id.* at 140, 148, and an allegedly constitutionally deficient reasonable doubt jury instruction. *Id.* at 149-52. It stated that the knowing and voluntary waiver standard does not apply "to 'the vast array of trial decisions, strategic and tactical, which

---

[10] Subsequently, in *Savoy v. State*, 420 Md. 232 (2011), which involved a belated direct appeal, the Court rejected a defendant's contention "that preservation by contemporaneous objection is not required to preserve an appellate challenge to a reasonable doubt instruction that lowers the constitutional standard of proof, because 'waiver' of such error requires that it be a *Zerbst*-type 'intelligent and knowing' waiver." *Id.* at 240. The Court also rejected a related argument "that an objection is unnecessary when . . . the claimed instructional error creates a 'structural' problem." *Id.*

[11] Hunt's second postconviction petition was filed prior to the effective date of the statutory amendment that limited convicted persons to a single postconviction petition. *Hunt*, 345 Md. at 128 n.2.

must be made before and during trial[,]'" *id.* at 138 (quoting *Estelle v. Williams*, 425 U.S. 501, 512 (1976)), and that "there is no authority for the proposition that the right to examine prospective jurors requires a knowing and voluntary waiver[.]" *Id.* at 143. Because Hunt acknowledged that "he did not object to the reasonable doubt instructions following their reading to the respective juries[12] and that he ha[d] not previously presented th[at] issue for appellate consideration[,]" *id.* at 150-51, the Court concluded that his claim had been waived.[13] *Id.* at 152.

In *Brand*, we partitioned claims raised for the first time in a postconviction petition into three categories: "those that are waived, those subject to a rebuttable presumption of waiver, and those that are not waived." 265 Md. App. at 155. We further stated that "[m]any claims, even those alleging the violation of a fundamental right, are waived if not raised at trial or on direct appeal." *Id.* (citing *Rose*, 345 Md. at 248; *Curtis*, 284 Md. at 147).

The claims "alleging a violation of a right so fundamental [as to be] governed by the knowing and voluntary waiver standard of *Johnson v. Zerbst*" are subject to a rebuttable presumption of waiver "if not raised at trial or on direct appeal." *Id.* (citing

_____

[12] Hunt's original death sentence had been vacated, and a second jury had subsequently reimposed the death penalty. *Hunt*, 345 Md. at 127.

[13] Hunt attempted to circumvent waiver by claiming that an intervening decision, *Wills v. State*, 329 Md. 370 (1993), had imposed "'a procedural or substantive standard not theretofore recognized,'" which was "'intended to be applied retroactively[.]'" *Hunt*, 345 Md. at 151 n.12 (quoting Md. Code (1957, 1996 Repl. Vol.), Art. 27, § 645A(d), now recodified at CP § 7-106(c)). The Court rejected that contention because its decision in *Wills* "did not alter existing case law with respect to the criteria under which a challenge to a reasonable doubt instruction is to be presented." *Id.* at 152.

18

CP § 7-106(b)(2); *Rose*, 345 Md. at 244; *Curtis*, 284 Md. at 148-49). There is, however, "a narrow class of claims that generally may be raised for the first time in a postconviction petition[.]" *Id.* Of these, "the most important and commonly asserted claim of this type is a claim of ineffective assistance of counsel[.]" *Id.* at 155-56. It "may be raised for the first time in a postconviction petition because, with narrow exceptions, it may not be raised on direct appeal." *Id.* at 156 (citing *Mosley v. State*, 378 Md. 548, 562 (2003)).

**Analysis**

The postconviction court concluded that Mr. Robb was entitled to proceed on his claims that postconviction counsel performed deficiently by failing to raise in the original postconviction proceeding his right to be present at the bench during voir dire and the issue of compound voir dire questions. In addition, the postconviction court declared that Mr. Robb "was presumptively prejudiced by counsel's unprofessional errors."

Because it is essential to the deficient performance analysis, we will address first whether the underlying claims were waived. We will then consider the deficient performance and prejudice issues.

### *Waiver of the Right to be Present*

"In Maryland, a criminal defendant has a common law right to be present at all critical stages of the trial." *State v. Hart*, 449 Md. 246, 264 (2016). In furtherance of that right, Rule 4-231 provides in relevant part:

> (a) **When presence required.** — A defendant shall be present at all times when required by the court. A corporation may be present by counsel.
>
> (b) **Right to be present — Exceptions.** — A defendant is entitled to be physically present in person at a preliminary hearing and every stage of the

19

trial, except (1) at a conference or argument on a question of law; (2) when a nolle prosequi or stet is entered pursuant to Rules 4-247 and 4-248.

(c) **Waiver of right to be present.** — The right to be present under section (b) of this Rule is waived by a defendant:

(1) who is voluntarily absent after the proceeding has commenced, whether or not informed by the court of the right to remain; or

(2) who engages in conduct that justifies exclusion from the courtroom; or

(3) who, personally or through counsel, agrees to or acquiesces in being absent.

(Emphasis added.)

As the Court in *Hart* observed, the defendant's right to be present was, at one time, held to be personal to the accused and could only be waived expressly by the defendant himself. *Hart*, 449 Md. at 265. But in *Williams v. State*, 292 Md. 201 (1981), the Supreme Court of Maryland "modified the common law right to permit, under certain circumstances, waiver by counsel in light of modern developments." *Hart*, 449 Md. at 265. According to the *Williams* Court:

> While the role of counsel in criminal cases has been generally the same over the past two hundred years, nevertheless there have been some significant changes. When many of our earlier cases involving waiver of the right to be present were decided, there was no right to counsel, including state-furnished counsel to indigents, in many criminal cases presenting the possibility of incarceration. Now, however, we do recognize such right under the Sixth Amendment and under Art. 21 of the Maryland Declaration of Rights, implemented by the Public Defender Act, [Maryland Code (2001, 2018 Repl. Vol.), Criminal Procedure Article, Title 16], and by Maryland Rule [4-215].
>
> Today, with the complexity of many criminal trials and the absolute right of counsel if there is a danger of incarceration, our system proceeds upon the assumption that it is primarily counsel's function to assert or waive most "rights" of the defendant. Unless a defendant speaks out, normally he

20

must be bound by the trial decisions, actions and inactions of counsel. Otherwise, the system simply would not work.

The right of the defendant to be present at bench conferences involving examination of jurors or prospective jurors, or during communications on a point of law between the court and jury, or during certain other stages of the trial, is no more "fundamental" than many other "rights" which can be waived by counsel's action or inaction. We know of no reason why this right should be set apart from other matters which are left to counsel. This conclusion is in accordance with the decisions of many other courts.

\* \* \*

There is, however, one important limitation to the change announced today concerning waiver of the right to be present. Under some circumstances, a violation of the right to be present is also a violation of the confrontation clause of the Sixth Amendment and of Art. 21 of the Maryland Declaration of Rights. Moreover, under some circumstances the absence of the defendant might implicate other constitutional rights. It is settled that ordinarily for a waiver of one's rights under the confrontation clause "to be effective, it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brookhart v. Janis*, 384 U.S. 1, 4 (1966).

With respect to all criminal trials, or parts of trials, taking place after the issuance of our mandate in this case, an effective waiver of the defendant's right to be present at every stage of the trial will not always require a personal waiver by the defendant. Where the right of confrontation is not implicated, and where there is involved no other right requiring intelligent and knowing action by the defendant himself for an effective waiver, a defendant will ordinarily be bound by the action or inaction of his attorney.

*Williams*, 292 Md. at 217-19 (citations omitted) (emphasis added). *See also McElroy v. State*, 329 Md. 136, 140-41 (1993) (explaining that a postconviction "petitioner will be deemed to have waived any claim of error if petitioner or petitioner's counsel failed to exercise a prior opportunity to raise" a non-fundamental right "notwithstanding a lack of personal knowledge of the right of which petitioner was deprived"); *id.* at 141 n.2

21

(observing that a "defendant's silence as to presence at bench conference would constitute waiver absent implication of other constitutional rights requiring an intelligent and knowing waiver" (citing *Williams*, 292 Md. at 214-16)).

Applying Rule 4-231(c), *Hart*, and *Williams* to the present case, we are persuaded that Mr. Robb waived his right to be present at bench conferences during the jury selection process. Applying *Brand*, *Rose*, *Hunt*, *Curtis*, and *Savoy*, we further conclude that his waiver was not subject to the *Zerbst* knowing and voluntary standard. *See also Noble v. State*, 46 Md. App. 154, 161 (1980) (holding that a defendant's right to be present at a bench conference "is one of those rights which can be waived by inaction and not one that requires an affirmative act based on an intelligent and knowing understanding of his rights").[14] It was error to conclude otherwise.

## *Voir Dire Waiver*

"To preserve any claim involving a trial court's decision about whether to propound a voir dire question, a defendant must object to the court's ruling." *Foster v. State*, 247 Md.

---

[14] The State observes that the postconviction court "appear[ed] to hold the trial judge to some higher standard when dealing with a pro se litigant." We are seeing many self-represented litigants in our courts, which makes the obligation to provide a fair and impartial trial to the parties in accordance with the Rules of Procedure more difficult. It is important that an unrepresented litigant understand what is happening as the trial progresses without the judge appearing to represent the self-represented party. Our view of the record suggests that the trial judge achieved the appropriate balance. The reality is that "[w]hen a defendant in a criminal case knowingly and voluntarily elects to proceed without counsel and manage his or her own defense, he or she 'relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel.'" *Morales v. State*, 325 Md. 330, 337 (1992) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)). When that happens, the defendant "is not entitled to have the trial judge act as his or her attorney." *Id.*

App. 642, 647 (2020), *cert. denied*, 475 Md. 687 (2021). "In addition, if the claim involves the court's decision to ask a voir dire question over a defense objection, the defendant must renew the objection upon the completion of jury selection." *Id.* at 647-48.

Applying these precepts to the instant case, we are persuaded that Mr. Robb, by failing to object to the voir dire questions, waived his underlying claim that the trial court "denied Mr. Robb his constitutional right to an impartial jury by asking improper questions during voir dire[.]" Moreover, applying *Hunt*, the knowing and voluntary waiver standard does not apply to Mr. Robb's claim of voir dire error because the decision whether to object to voir dire questions undoubtedly falls within "'the vast array of trial decisions, strategic and tactical, which must be made before and during trial.'" *Hunt*, 345 Md. at 138 (quoting *Williams*, 425 U.S. at 512). It was error to conclude otherwise.[15]

---

[15] As previously noted, Mr. Robb failed to perfect a direct appeal. Even if his claimed rights to be present at bench conferences during voir dire and to a voir dire without compound questions were rights subject to the *Zerbst* knowing and voluntary standard, it would seem to follow, under CP § 7-106(b)(1)(i)(3), that a rebuttable presumption of waiver arose by his failure to raise those (or indeed any) claims on "direct appeal, whether or not [he] took an appeal[.]" *See, e.g.*, *State v. Gutierrez*, 153 Md. App. 462, 470-75 (2003). In his statement of non-waiver in his motion to reopen, Mr. Robb baldly asserts, without mention of the failure to perfect a direct appeal: "The errors alleged in this case have not been waived because they were the result of ineffective assistance of post-conviction counsel in violation of Mr. Robb's Sixth Amendment right to counsel." But the record discloses that, at sentencing, the circuit court advised Mr. Robb as follows:

> If you have not pled guilty or otherwise waived your right of appeal, you may appeal your conviction and sentence to the [Appellate Court] of Maryland. If you choose to do so, you must request the appeal within thirty (30) days from this date. You must also order, in writing, from the Office of the Clerk of the Court, transcript of all testimony taken at your case. This must be done within ten (10) [days] after requesting appeal.

(continued…)

23

*Deficient Performance*

The application of the knowing and voluntary waiver standard to claims that were waived led the postconviction court to err in concluding that counsel in the original postconviction proceeding performed deficiently by failing to raise those claims. We hold that postconviction counsel's performance was not deficient in declining to raise claims that had virtually no prospect of succeeding. *See, e.g.*, *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (observing that "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues").

*Prejudice*

Because we have held that the postconviction court erred in its waiver and deficient performance findings, it would not be necessary to address the finding of presumed prejudice, but for completeness, we will address it briefly. As we recently explained in *Brand*, a presumption of prejudice arises under very narrow circumstances, including actual denial of counsel, the constructive denial of counsel, and a counsel's actual conflict of interest. *Brand*, 265 Md. App. at 148-50. Even when counsel's deficient performance involves a structural error, prejudice is not generally presumed. *Id.* at 157-67. *See Weaver*

---

Mr. Robb's signature appears at the bottom of the page.

Had the knowing and voluntary standard applied, Mr. Robb, on this record, has not rebutted the presumption that his waiver of trial rights was not knowing and voluntary under CP § 7-106(b)(1)(i)(3) because he failed to perfect a direct appeal.

24

*v. Massachusetts*, 582 U.S. 286, 299-303 (2017); *Ramirez*, 464 Md. at 541, 573 & n.11; *Newton v. State*, 455 Md. 341, 356-57 (2017).

Very few errors have been recognized as structural errors by either the Supreme Court of the United States or the Supreme Court of Maryland. According to the Supreme Court of the United States:

> Such errors include the denial of counsel, see *Gideon v. Wainwright*, 372 U.S. 335 (1963), the denial of the right of self-representation, see *McKaskle v. Wiggins*, 465 U.S. 168, 177-178, n.8 (1984), the denial of the right to public trial, see *Waller v. Georgia*, 467 U.S. 39, 49, n.9 (1984), and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction, see *Sullivan v. Louisiana*, 508 U.S. 275 (1993), . . . [as well as the] erroneous deprivation of the right to counsel of choice[.]

*United States v. Gonzalez-Lopez*, 548 U.S. 140, 149-50 (2006). Other errors recognized as structural include trial before a biased judge, *Tumey v. Ohio*, 273 U.S. 510, 535 (1927), and the exclusion of grand jurors on the basis of race. *Vasquez v. Hillery*, 474 U.S. 254, 261-64 (1986). *See Weaver*, 582 U.S. at 301 (terming each of those errors "structural" (citing *Neder v. United States*, 527 U.S. 1, 8 (1999)).[16] Our Supreme Court has recognized one additional structural error under Maryland constitutional law—the failure to swear a jury. *Newton*, 455 Md. at 354-55 (citing *Harris v. State*, 406 Md. 115, 130-32 (2008)). None of the above errors are raised, directly or derivatively, in this case.

---

[16] The Supreme Court of the United States has intimated that racial and sex discrimination in the selection of petit juries could be structural errors, but no decision of that Court thus far has stated so in express terms. *Weaver*, 582 U.S. at 301 (citing *Batson v. Kentucky*, 476 U.S. 79, 100 (1986); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 145-46 (1994)). However, the "errors in those cases necessitated automatic reversal after they were preserved and then raised on direct appeal." *Id.*

We have not been directed to nor are we aware of any controlling appellate decisions that hold that the failure to ensure a defendant's presence at bench conferences or that propounding of legally-erroneous voir dire questions constitute structural errors. The decisions touching on those issues suggest otherwise. For example, in *Walker v. State*, 338 Md. 253 (1995), the Supreme Court of Maryland, declaring that the defendants had waived their right to be present under Rule 4-231(c)(3), affirmed convictions entered following a trial held in absentia, and in *Rose*, 345 Md. at 249-50, it held that a claim of a constitutionally deficient reasonable doubt jury instruction was waived by the failure to object.

As to claims based on faulty voir dire questions, the case law indicates that such errors are not structural. In *State v. Jordan*, 480 Md. 490, 508-12 (2022), our Supreme Court held that a trial court's refusal to propound *Kazadi*-type questions[17] during voir dire was subject to a harmless error analysis, and the Court in *State v. Stringfellow*, 425 Md. 461, 473-77 (2012), held that erroneously propounding an anti-CSI voir dire question was also subject to a harmless error analysis.

In short, the postconviction court erred in concluding the underlying errors alleged in this case represented structural error. But even if they had, prejudice should not have been presumed. Ordinarily, the burden is on a defendant to "prove prejudice when raising an ineffective assistance claim based upon an unpreserved structural error." *Brand*, 265

---

[17] *Kazadi v. State*, 467 Md. 1, 45-46 (2020), held that, upon a defendant's request, a trial court is required to propound questions "that are aimed at uncovering a juror's inability or unwillingness" to follow a trial court's instructions on the State's burden of proof, the presumption of innocence, and a defendant's right not to testify.

Md. App. at 161. *See, e.g.*, *Weaver*, 582 U.S. at 300-01; *Ramirez*, 464 Md. at 541, 577; *Newton*, 455 Md. at 356-57.

Nor are we persuaded that the purported errors in Mr. Robb's trial rendered the proceeding fundamentally unfair. As previously noted, defendants in a criminal trial who elect to proceed without counsel, deprive themselves of "'many of the traditional benefits associated with the right to counsel.'" *Morales*, 325 Md. at 337 (quoting *Faretta*, 422 U.S. at 835). The consequences of his decision to waive counsel were explained to Mr. Robb, and the record reflects that the trial court was doing everything it reasonably could to ensure him a fair trial.

> **JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. COSTS ASSESSED TO APPELLEE.**